Bennie Sue **GLEGHORN**; Jean Ferguson; Lisa Faye Eaton; Naoma Dillard; and Olivia Perkins, Plaintiffs,

v.

**FIRST SECURITY BANK OF HORSE-SHOE BEND, ARKANSAS, et al., Defendants.**

No. LR–C–81–514.

United States District Court, E. D. Arkansas, W. D.

Sept. 29, 1981.

---

Richard Quiggle, Little Rock, Ark., for plaintiffs.

Leroy Blankenship, Harkey, Walmsley, Belew & Blankenship, Batesville, Ark., Robert D. Cabe, Allen Cabe & Lester, Little Rock, Ark., David White, City Atty., Horseshoe Bend, Ark., for defendants.

## MEMORANDUM AND ORDER

ROY, District Judge.

This cause came on to be heard before the Court on the plaintiffs' application for a temporary restraining order (or preliminary injunction) to prevent the City Attorney of Horseshoe Bend, Arkansas, from prosecuting the plaintiffs under *Ark.Stat.Ann.* § 67–711 (Repl.1980).[1] That statute makes it a misdemeanor to circulate any rumor with intent to injure the financial standing or reputation of, or to cause a run on, any bank.

Plaintiffs were fired by the defendant bank and have filed a sex discrimination suit against the bank and its officers. The

---

1. § 67–711. CIRCULATION OF FALSE RUMOR INJURIOUS TO BANK—PENALTY— Whenever any person maliciously and without cause circulates or causes to be circulated any rumor with the intent to injuriously affect the financial standing or reputation of any bank, either State or National, doing business in this State, either verbally or in writing, or makes any statement or circulates or assists in circulating any false rumor for the purpose of injuring the financial standing of any bank, either State or National, or seeks either by word or action to start a run upon said bank or connives or conspires with any parties for the purpose of injuring the standing or reputation or starting a run on said bank, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than $500.00 and by imprisonment in the county jail for not less than three [3] months nor more than one [1] year.

bank has since hired a private investigator, and the investigator has asked questions about plaintiffs which, they contend, were designed to elicit information which would enable authorities to bring charges under § 67–711. Plaintiffs allege that this amounts to retaliation for filing their discrimination suit. They also seek a declaratory judgment that the statute is unconstitutional as a prior restraint of protected speech; that it is overbroad in that it purports to regulate all discussion of a bank's financial affairs and reputation in the community; and that it is void for vagueness in that the terms "financial standing," "reputation" and "run" are impermissibly vague.

■ There are no charges pending against the plaintiffs at this time. Plaintiffs aver that the Court may act anyway, "since abstention does not reach actions under 42 U.S.C. § 1983." (Plaintiffs' Brief in Support of Motion for Temporary Restraining Order). However, *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), provides that the federal courts may intervene in state court proceedings under § 1983 "to prevent great, immediate and irreparable loss of a person's constitutional rights." 92 S.Ct. at 2160. The test is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope *only* by the stay of a court proceeding." *Id.* (Emphasis supplied).

■ Clearly, any harm of bringing these charges against the plaintiffs—assuming such a thing would have been done—will not result in "irreparable" loss of constitutional rights. Indeed, *Mitchum v. Foster*, supra, speaks of intervening in state court proceedings. No state court proceeding exists in which the Court might intervene.

However, plaintiffs contend that, under *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Court may enter an injunction notwithstanding the lack of state court proceedings. In *Dombrowski, supra,* though no criminal charges were filed against the petitioners at the time of their petition for injunctive relief, the Supreme Court held that, because of the chilling effect of threatened prosecutions, the denial of injunctive relief may well itself result in the denial of any effective safeguards against the loss of protected freedoms of expression and cannot be justified. However, in *Dombrowski*, the persons subject to arrest under the challenged statutes were actually arrested, charged with violations of those statutes, their offices raided and their files and records seized. Though the arrest warrants were later quashed, the officials continued to threaten prosecution.

Judging from the testimony herein, any threat of prosecution exists only in the minds of the plaintiffs. The putative conspirators and the attorneys denied any knowledge of § 67–711 until informed of the filing of the Motion for Temporary Restraining Order. Plaintiffs demonstrated no basis for their belief that they were to be prosecuted, and the hearing served to point out that fact. See *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ Inasmuch as there is no basis for the belief that the invocation of the statute to the detriment of the plaintiffs is imminent, there exists no reason for this Court to pass on the constitutionality of the statute. Cf. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The state courts are eminently capable of passing on the constitutionality of state statutes, should the occasion arise and, whenever possible, should be allowed to do so without intervention by the federal courts.

The motions for temporary restraining order, preliminary injunction and declaratory relief are denied. Of course, should the position of the parties change with respect to prosecution under § 67–711, plaintiffs are free to again seek equitable relief.

IT IS SO ORDERED.